UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FRED MADDOX,

                             **Plaintiff,**

   vs.                                                     5:14-CV-1068
                                                                  (MAD/TWD)

**CITY OF SYRACUSE,**

                             **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **OFFICE OF STEWART L. WEISMAN**<br>8060 Shadowrock Road<br>Manlius, New York 13104<br>Attorneys for Plaintiff | **STEWART L. WEISMAN, ESQ.** |
| **CITY OF SYRACUSE CORPORATION COUNSEL**<br>233 East Washington Street<br>Room 300 City Hall<br>Syracuse, New York 13202<br>Attorneys for Defendant | **JOHN A. SICKINGER, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 alleging that several individuals and municipal entities violated his constitutional rights in connection with an arrest that occurred on or about June 3, 2011. *See* Dkt. No. 1. On January 7, 2015, the City of Syracuse, Frank L. Fowler and the Syracuse Police Department ("City Defendants") filed a motion to dismiss for failure to state a claim. *See* Dkt. No. 9. On January 14, 2015, Onondaga County, the Onondaga County Sheriff's Department and Kevin Walsh ("County Defendants") filed a motion to dismiss for failure to state a claim. *See* Dkt. No. 10. Plaintiff opposed

Defendants' motions to dismiss the complaint, filed a cross-motion to amend his complaint, and submitted a proposed amended complaint in support of his motion. *See* Dkt. No. 11. In a July 16, 2015 Memorandum-Decision and Order, the Court granted in part and denied in part the motions to dismiss and the cross motion to amend. *See* Dkt. No. 15 at 20. On July 25, 2015, Plaintiff filed his amended complaint alleging that the City of Syracuse maliciously prosecuted him and that it failed to properly train and/or supervise its employees, has a policy or custom to effectuate arrests without probable cause, and acted with deliberate indifference towards Plaintiff's constitutional rights. *See* Dkt. No. 16.

Currently before the Court is Defendant's motion for summary judgment.

## II. BACKGROUND

On May 9, 2011, Syracuse Police Officer Michael Shannon ("Officer Shannon") responded to 320 N. Midler Avenue in Syracuse, New York in regards to a menacing investigation. *See* Dkt. No. 33-16 at ¶ 1. According to Defendant, Officer Shannon spoke with the alleged victim, Jerry Muldrow ("Muldrow"), who stated that Plaintiff had threatened him with a knife. *See id.* at ¶ 2. According to Muldrow's signed statement, Plaintiff approached him at a Wilson Farms store and withdrew a small black pocket knife from his front pocket. *See id.* at ¶ 3.[1] In his statement, Plaintiff further claimed that Plaintiff waved the knife in Muldrow's direction and stated "'I'm going to get you, I'm going to get you.'" *Id.*; *see also* Dkt. No. 33-11 at 1; Dkt. No. 33-10 at 5. Muldrow advised Officer Shannon that he had a similar experience with Plaintiff in the past wherein Plaintiff threatened to hurt him. *See id.* at ¶ 5; Dkt. No. 33-10 at 5. Muldrow

---

[1] The Court notes that although Plaintiff generally admits that Defendant's counsel has accurately described the content of Muldrow's written statement provided to Officer Shannon, he denies the truth of the content therein. *See* Dkt. No. 34-2 at ¶¶ 7-10.

informed Officer Shannon that he felt threatened for his safety and signed a statement desiring prosecution against Plaintiff. *See id.* at ¶¶ 6-7; Dkt. No. 33-10 at 5; Dkt. No. 33-11 at 1.

Based on Muldrow's statement, Officer Shannon applied for an arrest warrant. *See* Dkt. No. 33-16 at ¶ 11. On May 20, 2011, Syracuse City Court Judge Vanessa Bogan signed an arrest warrant charging Plaintiff with Menacing in the Second Degree. *See id.* at ¶ 12. On June 3, 2011, Syracuse Police Officer Charles Broddus arrested Plaintiff pursuant to the arrest warrant. *See id.* at ¶ 13; Dkt. No. 33-10; Dkt. No. 33-12. On August 30, 2011, Muldrow failed to appear at Plaintiff's criminal trial despite being served with a subpoena. *See* Dkt. No. 34-2 at ¶ 18. That same day, Syracuse City Court Judge James H. Cecile dismissed the charges against Plaintiff pursuant to Criminal Procedure Law § 170.30(1)(f) based on Muldrow's failure to appear in court. *See* Dkt. No. 33-16 at ¶ 14.[2] According to Plaintiff, the prosecutor "did not fight the motion to dismiss the case, did not seek an adjournment or postponement of the trial, did not reinstitute the charges, and did not take any further action against [Plaintiff] who was accused of wielding a knife in public and threatening to assault another person." Dkt. No. 34-2 at ¶ 19 (citing Dkt. No. 33-13).

During his deposition, Plaintiff testified that he does not know either Officer Shannon or Officer Broddus and does not recall ever having dealt with them in the past. *See* Dkt. No. 33-16 at ¶ 15; Dkt. No. 34-2 at ¶ 15. In an affidavit dated February 4, 2016, Muldrow claims that the statement he signed on May 9, 2011 with Officer Shannon was coerced and that officers told him to lie because "they wanted Fred Maddox off the street." Dkt. No. 33-14 at 1-2. Further, in this

---

[2] Although the transcript indicates that the charge against Plaintiff was dismissed under section "170.31(f)" of the Criminal Procedure Law, section 170.31 does not exist. The Court agrees with the parties that, given the circumstances, this was a dismissal pursuant to N.Y. Criminal Procedure Law § 170.30(1)(f). *See* Dkt. No. 33-16 at ¶ 14 n.1; Dkt. No. 34-2 at ¶ 14.

3

February 4, 2016 affidavit, Muldrow claims that the unnamed police officers told him that if he provided the false statement against Plaintiff, they would drop the assault charge pending against him. *See id.*

Thereafter, in a declaration dated April 21, 2016, Muldrow claims that the statement he provided to Officer Shannon was truthful and that neither Officer Shannon nor any other Syracuse Police Officer coerced him into signing the statement. *See* Dkt. No. 33-15 at 1. As to the February 4, 2016 handwritten affidavit, Muldrow admits that he signed it but did not read it before signing it. *See id.* at 1-2. According to Muldrow, he "signed the affidavit based on my belief that Mr. Maddox needed my signature on it in order to pursue future employment opportunities." *Id.* at 2. Further, Muldrow claims that "the contents of the [February 4] affidavit are not true. No member of the Syracuse Police Department forced me to write or sign the statement; no member of the Syracuse Police Department told me to lie about the May 9, 2011 incident involving Fred Maddox; and no member of the Syracuse Police Department promised to drop any charges against me if I signed the statement." *Id.*

### III. DISCUSSION

**A.      Standard of review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a

motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.  Municipal liability[3]**

Defendant contends that the Court should dismiss Plaintiff's *Monell* claim because it is premised on Plaintiff's argument that the "Syracuse Police Department's training 'does not contain discussion requiring an informant or complainant be credible as a basis for using that person's statement to support an application for the creation and filing of an accusatory instrument ... and/or an application for an arrest warrant.'" Dkt. No. 33-17 at 17. According to Defendant, "Plaintiff argues the absence of such discussion amounts to 'an official and/or informal policy or

---

[3] In his sur-reply, Plaintiff objects to an exhibit attached to Defendant's reply declaration which is part of a training manual discussing interviewing techniques for police officers. *See* Dkt. No. 41. Plaintiff argues that this exhibit should be disregarded because, among other things, it was not produced during discovery in this matter. *See id.* Since the Court finds that this exhibit is unnecessary to the disposition of the pending motion, it will not be considered in this Memorandum-Decision and Order.

5

custom to ignore the credibility of an informant or complaining witness in connection with the creation and filing of an accusatory instrument and/or the applicant for an arrest warrant.'" *Id.* (quoting Dkt. No. 33-8 at ¶ 17). Defendant contends "Plaintiff fails to point to any authority that indicates that unless this particular training is offered, the training is inadequate; or that there is a direct causal connection between the alleged deficiency and the deprivation of a constitutional right." *Id.*

"[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *accord Matusick v. Erie County Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Jones*, 691 F.3d at 80; *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) (holding that under Section 1983 governmental bodies are not vicariously liable for their employees' actions); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Thus, to prevail on a Section 1983 claim against a municipal entity, a plaintiff must show the following: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citation omitted); *see also Connick*, 563 U.S. at 60-61 ("Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that 'action pursuant to official municipal policy' caused their injury") (quoting *Monell*, 436 U.S. at 691, 98 S. Ct. 2018).

"A municipal policy may be pronounced or tacit and reflected in either action or inaction." *Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011). "Official municipal policy includes the

decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. In addition, municipal liability can be established "by showing that a policymaking official ordered or ratified the employee's actions – either expressly or tacitly." *Jones*, 691 F.3d at 81. "Thus, a plaintiff can prevail against a municipality by showing that the policymaking official was aware of the employee's unconstitutional actions and consciously chose to ignore them." *Id.* (citation omitted). To establish such deliberate indifference, "a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." *Id.* "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quotation omitted). Establishing deliberate indifference "'requires a showing that the official made a conscious choice, and was not merely negligent.'" *Id.* (citations omitted); *see also Cash*, 654 F.3d at 334.

To state a claim for municipal liability under Section 1983, a plaintiff must allege more than that a municipal policy or custom exists. *See Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) ("[T]he mere assertion that a municipality has ... a custom or policy is insufficient [to withstand dismissal] in the absence of allegations of fact tending to support, at least circumstantially, such an inference") (quotations, alterations and citation omitted); *accord Zherka v. City of New York*, 459 Fed. Appx 10, 12 (2d Cir. 2012). "Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citation omitted); *see also Triano v. Town of Harrison, N.Y.*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012).

Generally, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy[,]" *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991), unless "'there is an officially promulgated policy as that term is generally understood,' [or] 'where a single act is taken by a municipal employee who, as a matter of [s]tate law, has final policymaking authority in the area in which the action was taken.'" *Deraffele v. City of New Rochelle*, No. 15-cv-282, 2016 WL 1274590, *16 (S.D.N.Y. Mar. 30, 2016) (quoting *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008)). Similarly, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train[,]" because "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 61 (quotations and citation omitted).

In the present matter, the Court finds that Plaintiff has failed to raise a question of fact as to his municipal liability claim. In support of this claim, Plaintiff relies on the following language found in the Syracuse Police training manual: "Interview and interrogation is a broad and extremely complicated topic. Interviewing individuals for completion of incident reports, or interviewing victims or witnesses to an incident is unlikely to be complicated by legal requirements." Dkt. No. 33-6 at 71; Dkt. No. 34-1 at 11. Despite this statement in the training manual, Plaintiff contends that there are "legal limitations in connection with interviewing witnesses to or victims of a crime: police cannot be unnecessarily suggestive in an identification interview ...; police cannot threaten a witness or victim to give an account of an incident in a particular fashion; they cannot offer special favors or rewards to witnesses in exchange for their

8

testimony; and, they cannot violate a witness's or victim's civil rights to extract favorable testimony even if the violations are for a good purpose such as to get a bad man off the streets." Dkt. No. 34-1 at 11-12 (internal citation omitted). According to Plaintiff, "[t]here is little doubt that the policymaker who created or adopted these training rules for Syracuse police officers had to know to a degree of moral certainty that the information concerning the lack of legal limitations for interviewing witnesses and victims in the performance of police duties is not only outright wrong, but could lead to the very mischief that Maddox has complained about – police-generated witness testimony." *Id.* at 12.

Plaintiff relies on *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992) in support of his *Monell* claim. In *Walker*, the plaintiff alleged that the NYPD failed to adequately train its officers "not to commit perjury or aid in the prosecution of the innocent." *Walker*, 974 F.2d at 299. The Second Circuit observed a potential problem with that theory:

> Walker's argument misses a crucial step. It is not enough to show
> that a situation will arise and that taking the wrong course in that
> situation will result in injuries to citizens.... *City of Canton [v.
> Harris*, 489 U.S. 378 (1989),] also requires a likelihood that the
> failure to train or supervise will result in the officer making the
> wrong decision. Where the proper response — to follow one's oath,
> not to commit the crime of perjury, and to avoid prosecuting the
> innocent — is obvious to all without training or supervision, then
> the failure to train or supervise is generally not so likely to produce
> a wrong decision as to support an inference of deliberate
> indifference by city policymakers to the need to train or supervise.

*Id.* at 299-300 (internal quotation marks omitted). It held, however, that a failure to train would amount to deliberate indifference if policymakers continued to assume that their employees would exercise common sense "where there is a history of conduct rendering this assumption untenable." *Id.* at 300. Although the plaintiff had not "expressly alleged a history of police perjury," the Second Circuit reinstated his complaint because it did "not appear beyond doubt that Walker

9

cannot prove this set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotation marks omitted).

In the present matter, Plaintiff is alleging that he was wrongfully prosecuted because police officers coerced/threatened Muldrow into providing false testimony against him, thereby prosecuting an innocent person. These allegations are precisely what was at issue in *Walker*, which theory the Circuit found to be fundamentally flawed absent evidence of an established "history of police perjury" and deliberate inaction by the municipality in condoning such conduct. Unlike *Walker*, however, the present motion is one for summary judgment and, despite completing discovery, Plaintiff has offered no evidence that Defendant was "on active or constructive notice" that such a problem existed. *See Johnson v. Schiff*, No. 9:11-cv-531, 2013 WL 5465978, *6 (N.D.N.Y. Sept. 10, 2013). Plaintiff offers no proof of any prior cases involving similar conduct that would have provided notice to the City of Syracuse that the training was deficient in any way.

Plaintiff's claim is the type of isolated misconduct by a single actor that has repeatedly been found to be insufficient to support a municipal liability claim. *See Amnesty Am.*, 361 F.3d at 130; *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993); *City of Canton*, 489 U.S. at 390-91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.... It may be, for example, that an otherwise sound program has occasionally been negligently administered"). Plaintiff has presented no evidence that the City of Syracuse has a history of police officers fabricating evidence, committing perjury, or prosecuting the innocent. Nor is there a likelihood that failing to train officers not to take those actions would result in officers committing those acts, as the right thing to do – to only tell the truth, to only

prosecute the guilty, etc. – is obvious without training or supervision. *See Lambert v. City of New York*, No. 12 Civ. 4715, 2014 WL 8708238, *8 (S.D.N.Y. June 16, 2014); *Fincher v. County of Westchester*, 979 F. Supp. 989, 1008 (S.D.N.Y. 1997).

Plaintiff's conclusory allegations fall far short of satisfying the level of proof required to support this type of claim. Accordingly, the Court grants Defendant's motion for summary judgment.[4]

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motions for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 21, 2017
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

---

[4] Since Plaintiff has not named any individual defendants and the Court has granted the summary judgment motion as to Plaintiff's municipal liability claim, it is unnecessary to address the merits of the underlying malicious prosecution claim.